### NATIONAL DREDGING CO. v. MONSEN.

(Circuit Court of Appeals, Fifth Circuit. December 14, 1903.)

#### No. 1,302.

1. COLLISION—INLAND RULES—LIGHTS ON SCOW

Article 9, cl. "d," of the rules for inland navigation (Act June 7, 1897, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2879]), and the inspectors' rules made thereunder for Atlantic and Pacific coast inland waters, which require craft navigating by hand power, horse power, sails, or by the current of the river, or which shall be moored in or near a channel or fairway of any bay, harbor, or river, to carry one white light forward not less than six feet above the rail or deck, apply to a scow forming part of the equipment of a dredge engaged in deepening the channel of the river and bay of Mobile, and being used in the channel at night.

2. SAME—STEAMER PASSING DREDGE AND SCOW IN CHANNEL—INSUFFICIENT LIGHTS.

While a dredge was engaged in deepening the channel in the river and bay of Mobile it was customary for other vessels approaching to signal with their whistles, and for the dredge to answer if in a position to clear the channel and to move to the west side; otherwise the signal was not answered. While at work one night, a steamer approached and gave the signal, which was not answered, but the steamer proceeded, and came into collision with a scow attached to the dredge, which was still partly in the channel, although attempts were being made to move it out. The

scow did not carry the light required by the rules. *Held*, that the steamer was primarily in fault for undertaking to pass without an answer to her signal, but that the failure of the scow to carry the regulation light was a contributory fault.

Appeal from the District Court of the United States for the Southern District of Alabama.

The following is the opinion of Toulmin, District Judge, in the court below:

The negligence charged in the libel is: That the vessel proceeded up the channel before she received the customary reply from the dredge, which was to notify her that the dredge was in a position to clear the channel, or without going sufficiently to the eastward to avoid a collision with the dredge or her barge (scow) should she be found still engaged in dredging without having moved to the westward as customary. That it was customary when a vessel was approaching to notify the dredge of its approach by blowing three blasts of the whistle and within one-fourth of a mile, and if the dredge is in a position to clear the channel it responds with three blows of its whistle to notify the approaching vessel that it is in a position to move out of the way. The dredge is then pulled to the west and the vessel passes to the east. That the dredge and barge (scow) were both equipped with the lights required of them, and the lights were brightly burning. Clarke, the engineer of the tug, said it was customary when a vessel was approaching for her to give a signal by three blows of the whistle, and in response to them the dredge blows three whistles, and then hauls out to the west, and the vessel goes to the east. The dredge was brightly lighted. Saw no light on the scow. If there was one did not see it. Sutton, operator of the dredge: "The big light on dredge could probably light a distance of 60 feet around, and possibly more than that. Steamer approaching generally blows three whistles, and, if dredge is ready to move, she answers with three whistles, and, if she is not ready, she does not answer at all; was moving dredge when collision took place. Commenced hauling over when sighted the steamer. Had worked over about 100 feet on the west bank when steamer struck the scow. The tug was all around about the bow of the dredge." Foster, mate of dredge, says: "If the dredge was ready for the vessel to pass, it answered the signals of the vessel, but, if not, she did not answer. Three whistles was the signal. The scow was lying on the port bow of the dredge—southeast corner. They were fastened together by a line from the port bits of the dredge to the port bits of the scow." Guy, master of tug, says: "Was at the time of collision under the bow of dredge. Saw vessel approaching 10 or 15 minutes before she got up there. Saw her one-half mile off. Scow was on his starboard bow." Adams, United States inspector on dredge, says: "The approaching vessel gives three whistles, and the dredge, when she receives the signal, gives one just like it, and hauls out to the west. The dredge was hauling out westward before the collision occurred. The light on dredge shows well in front of the dredge—illuminates in front and shows to the sides some too. Scow was lying on the southeast corner of the dredge. End of scow struck the dredge back about 30 feet from the southeast corner. The tug came right in front of the dredge and was going to the scow, and backed out as the vessel approached." The witnesses for libelant say they heard no whistle from or blown by the steamer, and none from the dredge. It blew no whistles except danger signals when the steamer was very near. McKay, pilot on steamer, says: "It is customary to blow three whistles. Blew three whistles and cut the vessel to one-half speed. The dredge did not answer. Steamer blew again. Dredge answered. Steamer came on slow. When she got up to the dredge, saw the scow loaded. No light visible on her at the time. Ordered the steamer full speed back astern. So close to her could not get out of the way. Hit her, and she sloughed around and hit the dredge. Stopped the engine when I saw the scow. Vessel going about five miles an hour." Says he could have avoided the collision if the dredge had blown danger signals, and could have slowed up and backed off. If the scow had had a proper light on her would not have hit her. Did not see her until the

steamer got right on her, and saw her by the lights of the dredge, too close to avoid striking her. If the dredge had not blown three whistles, the steamer would not have come on, and there would have been no accident. Horn, chief mate of steamer, says: "Did not see the scow until a few seconds before striking her. Scow on east side of dredge hit scow in end near east corner. I was on deck of vessel on watch. Vessel was at slow speed. The pilot blew the whistle, and we heard the answer three times. The dredge was forward little on the port bow, little westward of the range lights, a little outside as you looked up the channel. Would have passed clear of the dredge on the east, the way we were going, and would have passed the scow clear if it had been in front of the dredge. Did not see the scow until nearly on top of her. As soon as I saw her, ordered one-half speed to the starboard, and the engines just commenced to work astern and we struck the scow. Did not strike the dredge. Went eastward of it. Saw no light on scow until the vessel struck it. Saw a lantern fall over then." Ralson, a sailor on vessel, says: "Was at the wheel. Blew three whistles. Dredge blew three whistles too. Was looking ahead. Did not see the scow." Hetland says: "Was on steamer. She blew whistles about 15 minutes before striking the scow. Blew a second time. Did not discover the scow until close on to it—only a few yards. Scow east of dredge. No light on the scow was seen by me."

The foregoing is substantially the allegations of the libel, and of the evidence in support of it on all material points in dispute. The undisputed evidence is that the scow was fastened by a line from the southeast corner of the dredge to the northeast corner of the scow; that in hauling over to the westward of the channel the scow was at such an angle to the dredge that the south or bow end of the scow was farther east in the channel than any part of the dredge was. The scow was not on a line or straight south with the dredge or on the side of the dredge, but was angling with the southeast corner of the dredge (about what degree not shown), and the length of line with which it was fastened not shown, but the size I believe was shown to be five inches; no evidence as to width of scow, but was as to length. The evidence is also undisputed that the light on the scow was one lantern placed on the hatch three or four feet above the deck, and about even with the combing; that the light on her was not that or such as required by the rules is without dispute on the evidence. The rule may as well be disregarded altogether as to be only partially complied with, and in a way which fails to be of any real service in indicating to other vessels the position and course of the one carrying them. The Titan (C. C.) 23 Fed. 414. In the absence of proper lights on the scow, it is incumbent upon it to show that the neglect to comply with the rule did not contribute to the collision. The Komuk (D. C.) 120 Fed. 841; The Maggie Ellen, 120 Fed. 662, 57 C. C. A. 124. "When a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. If it is proved that any vessel has not shown lights, the burden lies on her to show that her noncompliance with the regulations was not the cause of the collision." The Pennsylvania, 19 Wall. 136, 22 L. Ed. 148. In the case of collision the libelant must show the alleged negligence by a fair preponderance of the evidence; otherwise the libel will be dismissed. The Albert Mason (D. C.) 2 Fed. 821; The Edwin H. Webster (D. C.) 18 Fed. 724; The Joseph W. Gould (D. C.) 19 Fed. 785. The burden of proof is upon the libelant to show fault on the other vessel. The Wioma, 55 Fed. 338, 5 C. C. A. 122. The evidence as to whether the steamer received the customary reply from the dredge to notify her that the dredge was in a position to clear the channel is conflicting. The witnesses for libelant who were on the dredge testify one way. The witnesses for claimant who were on the steamer testify the other way. In collision cases courts of admiralty incline to accept the statements of a crew to the movements of their own vessel and what occurred thereon, rather than the statements coming from the crew of the other vessel. Assuming that the dredge did not

give the signals of readiness to move, it did in fact move, and hauled out to the westward, and beyond the channel or way of the steamer, at least in position to clear and did clear the channel, and was untouched. The vessel went sufficiently to eastward to avoid collision with the scow if the scow had been where the evidence tends to show it should have been—in front of the dredge. If so fastened to the dredge as not to linger in the channel, or not to keep on line in front of the dredge, it too, it seems, would have escaped. My opinion is that the libelant has not met the burden of proof resting on it, either as to the negligence charged or that its noncompliance with the rule as to lights was not the cause of the collision.

G. L. & H. T. Smith, for appellant.

H. Pillans, H. Hanaw, and Palmer Pillans, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The facts in the case may be taken as found in the opinion of the District Court brought up in the record, and we agree with that court in holding that article 9, cl. "d," of the act of Congress approved June 7, 1897 (30 Stat. 96 [U. S. Comp. St. 1901, p. 2879]), and the following regulation of the board of supervisors contained in the pilot rules for Atlantic and Pacific coast inland waters, to wit: "Resolved that all coal boats, trading boats, produce boats, canal boats, oyster boats, fishing boats, and other water craft navigating any bay, harbor or river, propelled by hand-power, horse-power, sail, or by the current of the river, of which should be moored in or near a channel or fair-way of any bay, harbor or river, shall carry one white light forward, not less than six feet above the rail or deck"—apply to a scow appurtenant to or forming part of the equipment of a dredging machine engaged in deepening the channel in the river and bay of Mobile, and that, as the proof shows that the scow in question carried no "white light forward not less than six feet above the rail or deck," it was in fault in the collision with the steamship Banan. But we find that, while the scow was in fault, and such fault contributed to the collision, yet it was not the principal or main fault which brought about the collision. The evidence shows, and the District Court found, that while the dredge was working in the channel, bay, and river of Mobile, and at the time of the collision, it was customary when a vessel was approaching to notify the dredge of its approach by blowing three blasts of the whistle, and within one-fourth of a mile, and if the dredge was in a position to clear the channel it was to respond with three blows of its whistle to notify the approaching vessel that it was in a position to move out of the way; the dredge then to move to the west, clearing the channel, and leaving the vessel to pass by to the east. This custom was well known to the pilot and officers of the steamship Banan. Now, the evidence shows, and we understand the District Court to agree in so far as signals are concerned, that on the occasion of the approach of the Banan on the night in question, when the signal was given by the Banan of its approach, the dredge was not in a position to clear the way, and it did not respond with three blows of its whistle to notify the Banan that the channel was clear; and yet the Banan pursued its course, keeping in the middle channel, and forcibly collided with the scow which was not wholly removed from the channel,

although efforts were being made to that end. The dredge, with its equipment of scows, was lawfully in the river channel, and had a right to be there, and it was the duty of the steamship Banan to respect the right and follow the custom in the case. We think it clear that the disregard of the custom by the steamship Banan was the primary and main cause of the collision. The fault of the scow contributed to the collision, because, if it had carried the regulation white light forward not less than six feet above the rail or deck, the steamship Banan could have seen the same, and by passing a little to the east have cleared both dredge and scow. As both vessels were in fault and contributed to the collision, the damages should be divided.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to enter a decree finding both the steamship Banan and the libelant's scow in fault, and that the damages therefor should be divided, and thereafter proceed according to admiralty rules and usages.